UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PATRICK LAWRENCE,

                       **Plaintiff,**

  vs.                                                  8:24-cv-00656
                                                          (MAD/DJS)

DETECTIVE SHATTICK et al.,

                        **Defendants.**
_____

APPEARANCES:                                    OF COUNSEL:

PATRICK LAWRENCE
24-B-3713
Bare Hill Correctional Facility
Caller Box 20
Malone, New York 12953
Plaintiff *pro se*

ST. LAWRENCE COUNTY                STEPHEN D. BUTTON, ESQ.
ATTORNEY'S OFFICE
48 Court Street
Canton, New York 13617
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      On May 14, 2024, *pro se* Plaintiff Patrick Lawrence ("Plaintiff") filed a civil rights action under 42 U.S.C. § 1983 against multiple defendants for alleged constitutional violations while he was a pre-trial detainee.[1] *See* Dkt. No. 1. Plaintiff's factual allegations stem from his arrest

---

[1] The Court notes that Plaintiff's mailing address has changed numerous times since the filing of the complaint. This Memorandum-Decision and Order will be served on Plaintiff at the address most recently on file with the Court.

1

during a traffic stop and his treatment while incarcerated at St. Lawrence County Correctional Facility. *See id.* Plaintiff's complaint originally alleged seventeen causes of action. *See id.*

On September 23, 2024, Magistrate Judge Daniel Stewart issued a Report-Recommendation and Order recommending that Plaintiff's fourth, fifth, seventh, fourteenth, fifteenth, and seventeenth causes of action, and all his Eighth Amendment claims, be dismissed with prejudice; Plaintiff's sixth, eighth, ninth, tenth, eleventh, twelfth, and thirteenth causes of action be dismissed with leave to amend; and Plaintiff's first, second, third, and sixteenth causes of action be permitted to proceed. *See* Dkt. No. 11 at 14.

Following Plaintiff's objections to the Report-Recommendation and Order, Dkt. No. 14, this Court issued a Memorandum-Decision and Order on February 19, 2025, adopting as modified Magistrate Judge Stewart's Report-Recommendation and Order, Dkt. No. 17. Plaintiff's sixth, eighth, ninth, tenth, eleventh, twelfth, and thirteenth causes of action were dismissed without prejudice and with leave to amend; Plaintiff's fourth, fifth, seventh, fourteenth, fifteenth, and seventeenth causes of action, as well as all his Eighth Amendment claims, were dismissed with prejudice and without leave to amend; Plaintiff's claims against seven defendants were dismissed with prejudice; and Plaintiff's first, second, third, and sixteenth causes of action were permitted to proceed. *See id.* at 21-22. Plaintiff was also given thirty days to amend his complaint. *See id.* at 22. After Plaintiff failed to substantively amend his complaint, Magistrate Judge Stewart issued an order reaffirming that Plaintiff's first, second, third, and sixteenth causes of action were to proceed. *See* Dkt. No. 18.

Count One alleges that Defendants Shattick, Yerdon, Tate, Merria, Bundette, Anderson, and Bigwarfe illegally detained Plaintiff in violation of the Fourth and Fourteenth Amendments. *See* Dkt. No. 1 at 7-9.

Count Two alleges that Defendants Yerdon, Tate, Merria, Bundette, Anderson, Shattick, and Bigwarfe, in violation of the Fourth and Fourteenth Amendments, failed to intervene in the constitutional violation alleged in Count One. *See id.* at 9-10.

Count Three alleges that Defendants Yerdon, Tate, Merria, Bundette, Anderson, Shattick, and Bigwarfe were deliberately indifferent to Plaintiff's medical needs, in violation of the Fourteenth Amendment, by failing to obtain medical attention after Plaintiff experienced hallucinations. *See id.* at 10-11.

Count Four (originally claim sixteen in the complaint), alleges that Defendants Harper, Amos, Mayo, Scott, Clary, Kerrigan, and Nurse 1-100 were deliberately indifferent in treating Plaintiff's serious medical needs by waiting seven-and-a-half months to conduct an MRI on his shoulder, not ordering an MRI on his back, ignoring his mental health needs by refusing to follow a mental health plan, and refusing Plaintiff shoulder surgery, all in violation of the Fourteenth Amendment. *See id.* at 22-23.

On August 20, 2025, the remaining Defendants filed a motion to dismiss all four of Plaintiff's surviving claims pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Dkt. No. 33. For the reasons set forth below, Defendants' motion is granted in part and denied in part.

## II. BACKGROUND

For a summary of the relevant factual background, the parties are referred to Magistrate Judge Stewart's Report-Recommendation and Order. Dkt. No. 11 at 4.

## III. DISCUSSION

**A.    Standard of Review**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the "legal sufficiency" of the pleader's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir.

3

2007) (citation omitted). A court's review of a motion to dismiss is limited to the facts presented in the pleading, documents attached to the pleading as an exhibit or incorporated by reference into the pleading, and documents that are "integral" to the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)). Courts must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). A complaint that "pleads facts that are 'merely consistent with' a defendant's liability" generally does not meet the pleading standard. *See id.* (quoting *Twombly*, 550 U.S. at 557).

Although *pro se* litigants are not exempt from these pleading requirements, federal courts must assess *pro se* litigants' pleadings more leniently than attorney-drafted pleadings. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). *Pro se* litigants' filings should "'be liberally construed,' . . . and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson*, 551 U.S. at 94 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Accordingly, this Court must

4

construe Plaintiff's pleadings "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (citation and emphasis omitted).

B.  **Standard for a § 1983 Claim**

Claims under § 1983 require "two essential elements: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of . . . [his] constitutional rights or privileges." *Annis v. Cnty. of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998) (citation omitted).  Defendants do not dispute that they are state employees acting under the color of state law, so the Court limits the analysis herein to whether Plaintiff has been deprived of his constitutional rights as a result of Defendants' actions.  In order to satisfy the constitutional deprivation requirement, a plaintiff must "allege a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

In addition to these elements, "[i]t is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010) (quoting *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006)).  "A defendant is 'personally involved' if he 'directly participated in the infraction.'" *Gray-Davis v. Rigby*, No. 5:14-CV-1490, 2016 WL 1298131, *5 (N.D.N.Y. Mar. 31, 2016) (quoting *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986)).  Direct participation is defined as "personal participation by one who has knowledge of the facts that rendered the conduct illegal." *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (footnote and citation omitted).  Supervisory liability also exists under certain circumstances, such as where a supervisor creates a "policy or custom" that allowed the violation to occur or continue, or is "grossly negligent in managing subordinates who caused the unlawful condition or event[.]" *Williams*, 781 F.2d at 323-24 (collecting cases).

### C.     Plaintiff's First Cause of Action

As summarized in Magistrate Judge Stewart's Report-Recommendation and Order, Dkt. No. 11 at 7, and this Court's earlier Memorandum-Decision and Order, Dkt. No. 17 at 10-11, Count One alleges false arrest, Dkt. No. 1 at 7-9. A § 1983 claim for false arrest is "substantially the same as a claim for false arrest under New York law." *Wagner v. Hyra*, 518 F. Supp. 3d 613, 624 (N.D.N.Y. 2021) (quotation omitted). "A plaintiff must allege that: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged." *Id.* (quotation omitted).

Plaintiff's allegation that his arrest was "illegal" fails under even the most liberal construction. Dismissal is appropriate because Plaintiff fails to provide a factual basis to support any inference that all four false arrest elements are satisfied. For example, Plaintiff's bald assertion that Defendants' conduct was "illegal" is a legal conclusion, which the Court need not accept as true, and lacks articulable factual assertions to support it. Although the complaint can be construed to allege that Plaintiff was confined against his will, Plaintiff does not allege facts suggesting that his arrest was "not otherwise privileged" or justified, other than broadly stating that the arrest was illegal. *See Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) ("Because probable cause to arrest constitutes justification, there can be no claim for false arrest where the arresting officer had probable cause to arrest the plaintiff"). Moreover, Plaintiff pled guilty to Criminal Possession of a Weapon in the Third Degree in satisfaction of all charges stemming from his arrest on February 7, 2023. *See* Dkt. Nos. 33-2, 33-3. This guilty plea "represents 'conclusive evidence of probable cause'" requiring dismissal of Plaintiff's false arrest claim. *Carruthers v. Colton*, 153 F.4th 169, 180 (2d Cir. 2025) (quotation omitted); *see also Timmins v.*

*Toto*, 91 Fed. Appx. 165, 166 (2d Cir. 2004).  Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's false arrest claim.

D.     **Plaintiff's Second Cause of Action**

Plaintiff alleges that the Defendants named in the second cause of action "failed to intervene with the constitutional violations . . . ." Dkt. No. 1 at 9-10.  As a preliminary matter, Plaintiff does not specify which constitutional violations he is claiming the named Defendants failed to stop, so this Court treats the second cause of action as alleging a failure to intervene in the constitutional violation alluded to in Count One.  *See id.*

To prevail, Plaintiff must have shown: "(1) that a constitutional violation was being committed . . . ; (2) that [Defendants] knew, or deliberately ignored, the fact that the constitutional violation was . . . committed; (3) that [Defendants] had a reasonable opportunity to intervene . . . ; and (4) that [Defendants] did not take reasonable steps to intervene." *Thomas v. City of Troy*, 293 F. Supp. 3d 282, 296 (N.D.N.Y. 2018).  Because this Court has found that Plaintiff failed to sufficiently allege a constitutional violation in his first cause of action, Count Two fails under the first element and is dismissed.

E.     **Plaintiff's Third and Fourth Causes of Action**

Plaintiff's third and fourth causes of action both appear to allege deliberate indifference to his medical needs.  Count Three states that during Plaintiff's arrest, he began to hallucinate, "holler[ed] for help[,] . . . [and] was left in the back of the patrol vehicle[]" instead of being "transport[ed] . . . to the hospital . . . ." Dkt. No. 1 at 10-11.  Then, Plaintiff alleges that the named Defendants "took him and chained him to the wall while hallucinating and falling unconscious[,] severely injuring his hand, elbow, wrist, shoulder, back, neck, [rotator] cuff, and labrum." *Id.* at 11.  Similarly, Count Four alleges that the named Defendants violated Plaintiff's

7

constitutional rights by waiting seven-and-a-half months to have an MRI done on his shoulder, not ordering an MRI on his back, ignoring his mental health needs "for months[,]" refusing to follow "the 2 ½ year successful mental health plan in place[,]" "[r]efusing to get psychiatric care leading to major delays in his criminal proceedings[,]" and "refusing the plaintiffs [sic] shoulder surgery." *Id.* at 23.

"A pre-trial detainee's claim for deliberate medical indifference is analyzed using a two-pronged standard drawn from Eighth Amendment principles and modified, as appropriate, to recognize the fact that a pre-trial detainee is entitled to slightly greater protection under the Fourteenth Amendment." *Carter v. Broome Cnty.*, 394 F. Supp. 3d 228, 240 (N.D.N.Y. 2019); *see also Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). For a pre-trial detainee to prevail on a claim of deliberate medical indifference, the complaint must allege: (1) "that the challenged conditions were sufficiently serious as to constitute objective deprivations of the right to due process"; and (2) "that [Defendants] acted with at least deliberate indifference to the challenged conditions." *Darnell*, 849 F.3d at 29; *see also Durr v. Slator*, 558 F. Supp. 3d 1, 22 (N.D.N.Y. 2021) (applying the standard set forth in *Darnell* to a pre-trial detainee's claim of deliberate indifference to a serious medical need).

On the first prong, "the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). "There is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition[,]" *Smith v. Outlaw*, No. 15-CV-9961, 2017 WL 4417699, *2 (S.D.N.Y. Sept. 30, 2017) (quoting *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003)), so even at the pleading stage, these inquiries are highly fact-specific, *see id.* Accordingly, the Second Circuit has identified helpful factors in

determining whether the first prong is adequately pled: "(1) whether a reasonable doctor or patient would perceive the medical need in question as important and worthy of comment or treatment, (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain." *Brock*, 315 F.3d at 162 (quotation omitted).

On the second prong, a plaintiff can satisfy the pleading standard "by showing that the defendant official 'recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, *or should have known*, that the condition posed an excessive risk to [the plaintiff's] health or safety.'" *Charles v. Orange Cnty.*, 925 F.3d 73, 87 (2d Cir. 2019) (quoting *Darnell*, 849 F.3d at 35).  Courts have also found that the second prong is properly pled by allegations of a defendant's "intentional efforts . . . to delay [the] plaintiff's access to medical care . . . when he was in extreme pain and . . . made his medical problems known to the attendant prison personnel, or complete denial of medical treatment, or of a reckless or callous indifference to the safety of prisoners." *Smith*, 2017 WL 4417699, at *3 (quotation omitted).

   1. **Count Three**

The Court construes Count Three to allege deliberate medical indifference based on the named Defendants' failure to take Plaintiff to the hospital while he was hallucinating.  This claim is subject to the two-pronged framework for deliberate medical indifference, as well as the requirement that Plaintiff allege personal involvement of each Defendant.

Plaintiff's complaint is ambiguous regarding the seriousness of his hallucinations. Although the hallucinations may have been a temporary result of Plaintiff's drinking from a soda can, Plaintiff alleges that he fell unconscious, apparently due to the hallucinations.  *See* Dkt. No. 1 at 10-11, 27.  Additionally, the complaint alleges that another person who drank from the same

9

soda can and also experienced hallucinations was rushed to the hospital, *id.* at 10-11, 26, suggesting that the condition was serious enough to require immediate medical attention. On the other hand, although Plaintiff alleges that he screamed for help, the complaint does not contain facts suggesting that he experienced chronic or substantial pain due to the hallucinations or that they affected his daily activities. However, due to Plaintiff's *pro se* status and the requirement to construe his pleadings to raise the strongest arguments they suggest, the Court finds that at this stage, Plaintiff has pled sufficient facts on the first prong.

To plead the second prong adequately and survive a motion to dismiss, the complaint must allege the personal involvement and requisite mental state of each named Defendant. Although Plaintiff's complaint lists the names of each Defendant he intends to sue on this Count, the complaint lacks specific factual allegations regarding whether the named Defendants acted with deliberate indifference. A complaint must provide "fair notice of the grounds for entitlement to relief . . . ." *Twombly*, 550 U.S. at 561. "A complaint generally fail[s] to meet that minimum requirement where allegations lump[] all the defendants together in each claim and provid[e] no factual basis to distinguish their conduct." *Gomez-Kadawid v. Lee*, No. 20-cv-01786, 2022 WL 676096, *6 (S.D.N.Y. Feb. 3, 2022) (citations and internal quotation marks omitted), *report and recommendation adopted*, No. 20-CV-1786, 2022 WL 558125 (S.D.N.Y. Feb. 24, 2022). However, a collective reference to multiple defendants may satisfy the pleading standard "when, given the specific circumstances of the case and drawing all reasonable inferences in the plaintiff's favor, there [is] an understandable explanation for why the [c]omplaint was not more particularized." *Id.* at *7 (quotation omitted).

Here, it is understandable that Plaintiff, who was allegedly hallucinating or unconscious, would be unable to recognize or remember the precise role of each Defendant in the purported

constitutional deprivations discussed in Count Three.  This circumstance, coupled with Plaintiff's *pro se* status, requires the Court to interpret the pleading leniently in this regard.  Furthermore, although Plaintiff does not plead facts specific to Defendants' mental state, the facts alleged (such as another person being rushed to the hospital after experiencing similar hallucinations) do support an inference that Defendants should have known Plaintiff's hallucinations posed a serious risk to his health and safety.

Accordingly, because the Court must afford Plaintiff special solicitude as a *pro se* litigant, Count Three may proceed.

### 2. **Count Four**

Count Four (claim sixteen in the original complaint) alleges that the named Defendants were deliberately indifferent to Plaintiff's serious medical needs by waiting seven-and-a-half months to get an MRI on his shoulder, not ordering an MRI on his back, ignoring his mental health needs, refusing to follow his established mental health plan, "[r]efusing to get psychiatric care leading to major delays in his criminal proceedings[,]" and "refusing the plaintiffs [sic] shoulder surgery."  Dkt. No. 1 at 23.

The deliberate indifference test discussed above also applies here.  Furthermore, the claims in Count Four must be categorized based on whether Plaintiff is claiming inadequate medical attention or no medical attention, as "[c]ourts distinguish between situations where no medical attention is given and situations where medical attention is given, but is objectively inadequate." *Davis v. Parker*, No. 9:16-CV-1474, 2020 WL 5848779, *6 (N.D.N.Y. Oct. 1, 2020) (quotation omitted).  This distinction affects the Court's approach to the first prong of the analysis.

When no medical attention is given, the question is "whether the inmate's medical condition is sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006), *abrogated on other grounds as recognized by Kravitz v. Purcell*, 87 F.4th 111 (2d Cir. 2023). However, when medical care is provided but objectively inadequate, the inquiry examines the "delay or interruption in treatment[,] rather than the prisoner's underlying medical condition alone." *Id.* (quoting *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003)). "In delay cases, the relevant time period begins when a defendant becomes aware of facts from which he could, and does, infer that a substantial risk of serious harm exists." *Davis*, 2020 WL 5848779, at *6 (quotation omitted).

      i. ***Denial of Medical Care***

In Count Four, Plaintiff's allegations based on refusal to follow the mental health plan, refusal of psychiatric care, refusal of shoulder surgery, and denial of an MRI on his back most plausibly fit in the "denial of care" category. Thus, to evaluate the first prong of the analysis, the Court uses the same factors listed above to determine whether Plaintiff's alleged medical conditions are sufficiently serious. The complaint alleges that Plaintiff had a mental health plan in place, Dkt. No. 1 at 23, suggesting recognition by medical professionals that his mental health conditions are serious. Similarly, as already discussed, multiple medical professionals allegedly told Plaintiff that he needed MRIs and surgery, although the complaint is not entirely clear about which conditions were the subject of those remarks. *See id.* at 30.

In addition, although Plaintiff does not plead concrete examples of these conditions' impact on his daily activities, insofar as his allegations regarding refusal of the MRI and surgery, the Court can infer such impact from his *pro se* complaint. For example, as discussed, Plaintiff sees a physical therapist for his physical conditions and daily pain. *Id.* at 31. The Court is unable

to make a similar inference for Plaintiff's allegations of denial of mental health care, aside from his claim that the refusal delayed his criminal proceedings. *Id.* at 23. Thus, the Court proceeds to the second prong only for the denial of an MRI and surgery.

On the second prong, Plaintiff names a series of Defendants, but does not plead specific facts regarding their mental state. Although Plaintiff references physicians who recognized the severity of his injuries and discussed the necessity of surgery and imaging, those physicians are not among the named Defendants. Moreover, although Plaintiff accuses Defendant Kerrigan of "teach[ing] the other nurses to be rude and miserable[,]" Dkt. No. 1 at 32, the complaint is devoid of facts supporting a plausible inference that the named Defendants knew or should have known about Plaintiff's physical conditions and potential need for immediate imaging and surgery. The complaint also does not support any inference that the named Defendants were personally involved in the decision not to provide imaging or surgery. Finally, unlike with Count Three, there is no discernible reason why Plaintiff would be unable to identify which Defendants participated in the alleged violations in Count Four. Therefore, Plaintiff's "denial" claims in Count Four fail to plead the second prong and must be dismissed.

### ii. *Delay of Medical Care*

Count Four alleges that the named Defendants delayed an MRI on Plaintiff's shoulder and ignored his mental health needs "for months." *Id.* at 23. Because a delay—not denial—is alleged, the Court considers whether the delay was sufficiently serious to satisfy the first prong of the analysis. In this regard, Plaintiff's complaint alleges few facts permitting a plausible inference that the first prong is sufficiently pled. For example, although Plaintiff discusses his general pain and discomfort, he does not plead facts suggesting that the *delay* in getting a shoulder MRI or mental health treatment exacerbated his conditions.

Regardless, as with Plaintiff's "denial" claim, his "delay" claim fails to plead with any specificity the personal involvement of each named Defendant. Again, the complaint does not plausibly suggest any reason why Plaintiff would be unable to name individual Defendants for this portion of the action. Accordingly, the remainder of Count Four is dismissed.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the reasons set forth above, the Court hereby

**ORDERS** that Defendants' motion to dismiss (Dkt. No. 33) is **GRANTED in part and DENIED in part**; and the Court further

**ORDERS** that Counts One, Two, and Four of Plaintiff's complaint (Dkt. No. 1) (originally pled as claims one, two, and sixteen) are **DISMISSED**; and the Court further

**ORDERS** that Count Three (originally pled as claim three) proceed, and that Defendants file an answer; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: January 29, 2026
Albany, New York

Mae A. D'Agostino
U.S. District Judge